Michael Cohen - #98066
Bruce E. Krell, Inc. - #52542
Jerome M. Garchik - #50562
LAW OFFICES OF BRUCE E. KRELL
Grove Law Building
345 Grove Street
San Francisco, CA 94102
415/861-4414
Fax: 415/431-4526
mikecohen@sprintmail.com

Attorneys for Plaintiff


UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM E. KNIGHT, | No. CV 11 6337 - JST |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| DIANE AQUI, MARK D. JORDAN, Deceased, ESTATE OF MARK. D. JORDAN, and DOES 1-100, | DATE: 9/5/13<br>TIME: 2:00 P.M.<br>COURTROOM 9, 19th Floor |
| Defendants. | |
| _____/ | |


INTRODUCTION

Plaintiff moves for Partial Summary Judgment that:

      a.     Defendant Diane Aqui is liable to Plaintiff for Professional Negligence;

      b.     Defendant Aqui is liable to Plaintiff for Conversion;

      c.     Defendant Aqui is liable to Plaintiff for Negligent Misrepresentation;

      d.     Defendant Aqui is liable to Plaintiff for Breach of Fiduciary Duty;

      e.     Defendant Aqui is liable to Plaintiff for Breach of Contract;

      f.     Defendant Aqui is liable to Plaintiff for special damages of $102,300.18, plus interest;

      g.     Defendant Aqui's liability to Plaintiff is "joint and several" with her now-deceased joint venturer in representing Plaintiff.

1

FACTS

Defendant Attorney Diane Aqui (along with attorney Mark D. Jordan, now deceased, hereinafter referred to jointly as Ms. Aqui) jointly represented herein Plaintiff William Knight as a plaintiff in an employment-related claim against an entity called "Doubleshot, Inc."  Ms. Aqui and Mr. Knight signed a contingency fee contract, drafted by Ms. Aqui, dated March 29, 2007. See Exhibit 1 to the Deposition of Ms. Aqui, attached herein as Exhibit "D" to the supporting Declaration of Michael Cohen.

By this agreement, in relevant part, attorney fees were set at 40% of the total amount "realized," after deduction for advanced costs.  There was nothing in the agreement pertaining to any possibility of a settlement to be paid in installments.  *Id.*

Mr. Knight and Doubleshot reached a settlement agreement before trial, by which Doubleshot agreed to pay $550,000 in installment payments over a 3-year period. The promise was not secured or guaranteed.  It was not an insured annuity or other form of reliable structured settlement.  See Exhibits 2 and 4 to the Deposition of Ms. Aqui, attached herein as Exhibits "E" and "G" to the supporting Declaration of Michael Cohen.

Doubleshot made some, but not all, of the promised payments, then stopped making payments.  It is anticipated that Doubleshot may never make the outstanding payments.  The amount of payments made (including an approximately $5,000 "penalty" for a late payment) totaled $254,999.99, leaving $305,000.01 still outstanding.  See supporting Declaration of Plaintiff, ¶2

Ms. Aqui took $204,300.78 of the $254,999.99 realized, distributing $50,699.81 to Mr. Knight.  See supporting Declaration of Plaintiff, ¶3

At the time she did so, she was not aware of *Dalzell v. State Bar* (1936) 6 Cal.2d 433, or the holding of that case.  See Deposition excerpt of Ms. Aqui, in supporting Declaration of Michael Cohen, ¶7q.

That case clearly holds that the standard of care, as well as State Bar rules and common

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1  sense, required her to limit her contingency fee to the contract percentage of the amount *actually*

2  *collected*.   See LAW section, below.

3      Ms. Aqui did not research the question or ask the State Bar (or anyone else) for advice.

4  She had, at the start of her practice, worked briefly in a firm that handled personal injury

5  contingency fee cases, and had noticed that those attorneys charged a fee up front on the full

6  value of insured annuities or structured settlements.  She believed that this practice would be

7  appropriate in this and other cases where a defendant's promises to pay are unsecured and

8  uninsured.  See Deposition excerpt of Ms. Aqui, in supporting Declaration of Michael Cohen,

9  ¶¶7j-k.

10      When her client (Mr. Knight) realized he was taking the primary risk of Doubleshot's

11  nonpayment, he discussed it with Ms. Aqui, who "compromised" her position.  Mr. Knight

12  agreed to the compromise based on Ms. Aqui's false representation to Mr. Knight that she was

13  legally entitled to 40% of the total amount promised, paid before Mr. Knight received his share,

14  as inducement to Mr. Knight to compromise his rights.  See supporting Declaration of Plaintiff,

15  ¶4.

16      Under the Settlement Agreement, all the payments were to be, and were, mailed to Ms.

17  Aqui.  See Exhibits 2 and 4 to the Deposition of Ms. Aqui, attached herein as Exhibits "E" and

18  "G" to the supporting Declaration of Michael Cohen, and Deposition excerpt of Ms. Aqui, in

19  supporting Declaration of Michael Cohen, ¶¶7j-k.

20                                      LAW

21                         General Summary Judgment Law

22      A motion for summary judgment provides a procedure for terminating without trial

23  actions in which "there is no genuine dispute as to any material fact and the movant is entitled to

24  judgment as a matter of law." [FRCP 56(a) (emphasis added)]

25      A motion for summary judgment can be used by any party [FRCP 56(a)]; including as

26  well to dispose of all or part of the opposing party's claims or defenses (so-called "partial

3

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1  summary judgment,") [FRCP 56(a)].

2  It can dispose of claims or defenses having no factual support, as well as those in which

3  the facts are undisputed, or which turn solely on issues of law. [See *Schneider v. TRW, Inc.* (9th

4  Cir. 1991) 938 F2d 986, 991]

5  Upon a showing that there is no genuine dispute of material fact as to particular claim(s)

6  or defense(s), the court may grant summary judgment in the party's favor on "each claim or

7  defense—or the part of each claim or defense—on which summary judgment is sought."  FRCP

8  56(a); see *Beal Bank, SSB v. Pittorino* (1st Cir. 1999) 177 F3d 65, 68; *Wang Laboratories, Inc. v.*

9  *Mitsubishi Electronics America, Inc.* (CD CA 1993) 860 FS 1448, 1450.  The standards and

10  procedures are the same as for summary judgment.

11  Moreover, "(i)f the court does not grant all the relief requested by the motion, it may enter

12  an order stating any material fact—including an item of damages or other relief—that is not

13  genuinely in dispute and treating the fact as established in the case."  FRCP 56(g)]

14  The requirement that there be "no genuine dispute" about a material fact is determined

15  under federal (Rule 56) standards. The federal judge must determine whether a reasonable jury

16  could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.* (1986) 477 US

17  242, 248–250.

18  If the evidence offered in support of the motion establishes every essential element of the

19  moving party's claim or defense, there is no need to offer evidence to negate or disprove matters

20  on which the opposing party has the burden of proof at trial.  *Celotex Corp. v. Catrett* (1986) 477

21  US 317, 323; *Crawford v. Countrywide Home Loans, Inc.* (7th Cir. 2011) 647 F3d 642, 648.

22  The opposing party's evidence, whether or not it has the burden of proof at trial, must be

23  sufficient to create a genuine dispute as to a fact that is material to the outcome of the suit. *Rojas*

24  *v. Roman Catholic Diocese of Rochester* (2nd Cir. 2011) 660 F3d 98, 105–106; *Motus v. Pfizer*

25  *Inc.* (*Roerig Div.*) (9th Cir 2004) 358 F3d 659, 660.

26  "Where the record taken as a whole could not lead a rational trier of fact to find for the

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1    nonmoving party, there is no 'genuine issue for trial.' " [*Matsushita Elec. Indus. Co., Ltd. v.*

2    *Zenith Radio Corp.* (1986) 475 US 574, 586–587].

3          "The mere existence of a scintilla of evidence ... will be insufficient; there must be

4    evidence on which the jury could reasonably find for (the opposing party)." *Anderson v. Liberty*

5    *Lobby, Inc.* (1986) 477 US 242, 252 (parentheses added).

6                              Relevant Substantive Law

7          *Dalzell v. State Bar* (1936) 6 C2d 433, Controls the Instant Case as a Matter of Law

8          In *Dalzell*, just as herein, an attorney, operating under a retainer agreement essentially the

9    same as that at-issue herein, asserted (arguing he had already done all the work) that he was

10   entitled to his full contingency amount out of the first money's collected, regardless whether any

11   further money was ever collected.

12         The Supreme Court made short work of this argument, holding, at page 438 (in pertinent

13   part), that:

14           . . . As appears from the contract above quoted, he was employed . . . "to
         collect" the interests of his . . . clients in the estates above mentioned, for which
15       he was to be paid "25 per cent of the amount recovered", which fee was to be
         deducted "from the amount of recovery".  As we read the contract, it can only be
16       interpreted to warrant the retention by petitioner of 25 per cent of the amount
         collected by or realized  for his clients.[1]

17

18         It is respectfully submitted that the following further legal conclusions derived from this

19   law are inescapable:

20         1.      Defendant herein had NO RIGHT, under any theory, to more than 40% of

21   the money actually collected, which is 40% of $254,999.99, or $102,000.00, as opposed to the

22   $204,300.78 Defendant actually took.

23         2.      The rest of the money collected (i.e., $152,999.99) was Plaintiff's property

24   //

25

26         [1]      "Realized" being the operative word in the herein at-issue contract; and keeping in
     mind also that said contract had no provision at all for installment recovery.

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1   (of which he received only $50,699.81) to which property Defendant had no legal right at all.[2]

2   <u>Conversion</u>

3       Conversion is the wrongful exercise of dominion over personal property of another.

4   *Steele v. Marsicano* (1894) 102 C 666, 669, *Poggi v. Scott* (1914) 167 C 372, 375, *Moore v.*

5   *Regents of Univ. of Calif.* (1990) 51 C3d 120, 137, *Kee v. Becker* (1942) 54 CA2d 466, 470,

6   *Farmers Insurance Exchange v. Zerin* (1997) 53 CA4th 445, 451.

7       Money can be the subject of a cause of action for conversion if, as herein, there is a

8   specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to

9   another, and fails to make the payment.  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser,*

10   *Weil & Shapiro, LLP* (2007) 150 CA4th 384, 395.

11       Although the act constituting conversion must be knowing or intentional, a wrongful

12   intent is not necessary:

13         "The foundation for the action of conversion rests neither in the
knowledge nor the intent of the defendant.  It rests upon the unwarranted

14         interference by defendant with the dominion over the property of the plaintiff
from which the injury to the latter results.  Therefore, neither good nor bad faith,

15         neither care nor negligence, neither knowledge nor ignorance, are of the gist of the
action." *Poggi v. Scott* (1914), *supra*.

16

17       It follows that mistake, good faith, and due care are immaterial, and may not be set up as

18   defenses in an action for conversion.  *Chatterton v. Boone* (1947) 81 CA2d 943, *Shahood v.*

19   *Cavin* (1957) 154 CA2d 745, 751, *Beverly Finance Co. v. American Cas. Co. of Reading,*

20

---

21      [2]    Importantly: The instant case is NOT a fee dispute.  Fee disputes involve

22   contended valuation of an attorney's services determined by weighing a set of well known
factors: "*The nature of the litigation, its difficulty, the amount involved, the skill required in its*

23   *handling, the skill employed, the attention given, the success or failure of the attorney's efforts,*
*the attorney's skill and learning, including his age and experience in the particular type of work*

24   *demanded*" [1 Witkin Procedure §199].  The instant case involves no contention regarding the
value of the services, but rather the construction of not-even-slightly ambiguous contract

25   language, held by unquestioned Supreme Court authority to be interpreted as Plaintiff herein
asserts, NOT as to the value of Defendant's services, but only as to what the undeniably

26   applicable contract defines as Plaintiff's property; and, respectfully submitted, any claim that the
amount in controversy herein should be referred to as a disputed fee amount can therefore have
no more legal effect than a claim that such amount should be deemed chocolate ice cream.

---

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1    *Pennsylvania* (1969) 273 C.2d 259, 264.

2    <u>Negligent Misrepresentation</u>

3    CACI 1903 instructs that the tort of Negligent Misrepresentation requires that:

4       1. The defendant represented to the plaintiff that an important fact was true;

5       2. The representation was not true;

6       3. Although the defendant may have honestly believed the representation was true,

7    the defendant had no reasonable grounds for believing the representation was true when the

8    defendant made it;

9       4. The defendant intended that the plaintiff rely on the representation;

10       5. The plaintiff reasonably relied on the representation;

11       6. The plaintiff was harmed; and

12       7. The plaintiff's reliance was a substantial factor in causing the harm.

13    The herein Defendant (*by the way, a fiduciary in a position of superior knowledge to the*

14    *Plaintiff, although she, apparently unknowingly, albeit clearly, did not know what she was*

15    *talking about*) told her client that the client had no right to money he had complete and total right

16    to, thereby intentionally inducing Plaintiff to "compromise" his claim for the money, costing him

17    more than $100,000.

18    <u>Breach of Fiduciary Duty</u>

19    "The relation between attorney and client is a fiduciary relation of the very highest

20    character, and binds the attorney to most conscientious fidelity—*uberrima fides*." *Cox v. Delmas*

21    (1893) 99 C 104, 123. It has been expressly held that misappropriation of settlement funds, as

22    herein, constitutes a violation of this duty. *Gutierrez v. Girardi* (2011) 194 CA4th 925.

23    <u>Professional Negligence</u>

24    Plaintiff's highly qualified expert testified on this point in his herein deposition[3], in

25

26       [3]   See the source excerpts from Mr. White's deposition in ¶s 3 and 4 of the
supporting deposition of Michael Cohen.

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1   essence, that:

2           It is below the standard of care for an attorney in a contingency case with an

3   installment settlement to take more than the contingency percentage of amounts actually

4   collected or received -- as opposed to cases in which the installments are to be paid pursuant to a

5   "structured settlement" in which an annuity or equivalent is purchased from a highly rated

6   insurance company or equivalent.

7           The reasons for this are as follows:

8           It is the law, under *Dalzell*;

9           It is so universally the practice among contingency fee attorneys that no

10  one with any meaningful knowledge about contingency fee practice would think of doing what

11  Defendant Aqui did herein.

12          Part of the rationale for this rule is that, to paraphrase Samuel Goldwyn, in

13  strong contrast with "structured settlements", an unsecured, un-guaranteed, installment

14  settlement or judgment (as was the case herein) is, at stage of the initial payments, not worth

15  anything close to the agreed total settlement amount.  I.e., it is the equivalent of a junk bond..

16          It is malpractice for the lawyer not to know the basic rules and practices in

17  the area in which that attorney is running a case; and, even if it were not malpractice for the

18  attorney not to know the above rules and practices going in, as soon as there is a hint of conflict

19  or disadvantage to the client, it would be the attorney's duty to do the minutes of research (either

20  by looking in Rutter or the equivalent and/or by calling the Ethics Hotline, or any attorney

21  familiar with contingency work) that would reveal those rules and practices.

22          Relatedly: Although (especially in light of *Dalzell*) the herein contract is

23  not at all ambiguous, if there was any hint of ambiguity suggesting a conflict between the

24  attorney and the client, it would be below the standard of care, and a violation of the attorney's

25  fiduciary duty, for the attorney not to realize that any such ambiguity would have to be construed

26  against the attorney who drafted the contract.

8

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1                     <u>Joint and Several Liability</u>

2       Plaintiff's expert's deposition testimony on this point[4] is, in essence, that it is his

3 universal experience in decades of contingency practice and many cases sharing with another

4 attorney the responsibilities of representing a client (paralleled by the experience of all other

5 contingency attorneys he knows) that, when more than one attorney jointly represent a client in a

6 contingency case, the client pays only the contingency percentage, without being concerned with

7 how the attorneys decide among themselves to divide it; and he has never heard of a contingency

8 case of joint representation where the client owed part of the fee to one attorney and the other

9 part of the fee to the other attorney -- keeping in mind also that there is nothing in the herein

10 contract which would indicate any such arrangement.

11       Further, as is seen in Defendant Aqui's own deposition testimony herein, there was no

12 arrangement in any of the dealings involved in this case that would suggest any such

13 arrangement, since there was neither agreement nor pattern of work on the case as between

14 Defendant Aqui and Defendant Jordan, and one or the other of them just did whatever came up

15 as it came up.[5]

16       It is respectfully submitted that such arrangement constitutes a classic Joint Venture, or

17 partnership for a specified, limited purpose, in which the general partnership rule of joint and

18 several liability applies.  See Witkin, *Procedure*, Partnership, §9, Corp C 16306(a), and *Hupfeld*

19 *v. Wadley* (1948) 89 CA2d 171, 175 (members of a joint venture are, like partners, liable for torts

20 of one member committed in furtherance of the enterprise).

21                     CONCLUSION

22       For the reasons set forth above, Plaintiff respectfully requests Partial Summary Judgment

23 that:

24

---

25      [4]    *Id.*

26      [5]    See Aqui Deposition excerpts in ¶7 of the supporting Declaration of Michael
Cohen, in particular, sub-paragraphs: b-f, and m.

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment

1    a.    Defendant Diane Aqui is liable to Plaintiff for Professional Negligence;

2    b.    Defendant Aqui is liable to Plaintiff for Conversion;

3    c.    Defendant Aqui is liable to Plaintiff for Negligent Misrepresentation;

4    d.    Defendant Aqui is liable to Plaintiff for Breach of Fiduciary Duty;

5    e.    Defendant Aqui is liable to Plaintiff for Breach of Contract;

6    f.    Defendant Aqui is liable to Plaintiff for special damages of $102,300.18,

7  plus interest;

8    g.    Defendant Aqui's liability to Plaintiff is "joint and several" with her now-

9  deceased joint venturer in representing Plaintiff.

10  DATED: July 26, 2013            Respectfully Submitted,

11                                  LAW OFFICES OF BRUCE E. KRELL, INC.

12

13

14

15

16  By_____
                                    Michael Cohen

17

18

19

20

21

22

23

24

25

26

Plaintiff's Memorandum of Points and Authorities in Support of Partial Summary Judgment