EDWARD D. HAAS (State Bar # 76647)
ROECA HAAS HAGER LLP
250 Montgomery Street, Suite 1410
San Francisco, CA 94104
Telephone: (415) 352-0980
Facsimile:  (415) 352-0988
Email: ehaas@r2hlaw.com

Attorneys for Defendant
DIANE AQUI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| WILLIAM E. KNIGHT,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DIANE AQUI, MARK D. JORDAN, Deceased, ESTATE OF MARK D. JORDAN, and Does 1-100,<br><br>　　　　Defendants. | Case No. CV11 6337 JST<br><br>**DEFENDANT AQUI'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　September 5, 2013<br>Time:　　2:00 p.m.<br>Dept.:　　Courtroom 9, 19th Floor |

Plaintiff's motion sidesteps two important points: (1) Ms. Aqui discussed how the money would be allocated to her and Mr. Jordan, and Mr. Knight went along with it. He only changed his mind after Double Shot defaulted. (2) Ms. Aqui did not receive the entire amount sought from her by Mr. Knight. Mr. Jordan received the rest. If the court finds liability, at most Ms. Aqui should be ordered to pay the amount she actually received and is not responsible for money that went to Mr. Jordan.

**1.    Factual Response**

Plaintiff's factual statement is largely correct, but is mistaken in some respects:

Contrary to what plaintiff's states (P&A, 2:5), Ms. Aqui did not draft the subject retainer agreement. It was drafted by Mr. Jordan. She had no input into the drafting. (Aqui Depo. 17:8-15)

OPPOSITION TO SUMMARY JUDGMENT
MOTION

KNIGHT v. AQUI, et al.
Case No. CV11 6337 YGR

1   Plaintiff states it is anticipated that Double Shot will not make any further payments under

2   the underlying settlement agreement, but there is no evidence provided to support that. (P&A 17-

3   18)  Instead, Ms. Aqui's understanding is that Mr. Knight has sued the principals of Double Shot

4   in an attempt to try and collect the remaining settlement payments.

5   As explained below, plaintiff's citation of the holding of *Dalziel vs. State Bar* (1936) 6

6   Cal.2d 433 is erroneous, and should not be stated as a factual matter. (P&A, 2:26-3:2)

7   Plaintiff's statement that "all" the settlement payments were to be sent to Ms. Aqui (P&A:

8   3:16-19) is contrary both to the express language of the settlement agreement, and Ms. Aqui's

9   deposition testimony. (This is addressed in more detail below at page 3:6 and following)

10  **2.    Ms. Aqui did not Convert Plaintiff's Funds**

11  Plaintiff's essential argument is the retainer agreement in question is clear that he was

12  entitled to the $105,000 he now claims from Ms. Aqui and Mr. Jordan.  As explained next,

13  plaintiff's construction of the retainer agreement is not supported by its language.

14  Further, the *Dalziel* case is not applicable and is certainly not dispositive.  The language in

15  the agreement in that case was materially different from the one at issue here, and the court did

16  not announce – as claimed by plaintiff – a blanket rule mandating liability.

17  First, as noted, plaintiff's assertion that Ms. Aqui "took" his funds (P&A 1:21) is simply

18  not true.  Ms. Aqui received one-half the funds in question, while the other half went to Mr.

19  Jordan.  Mr. .Knight acknowledges this in his declaration. (Knight Decl., ¶3)  Even if the court

20  finds liability, Ms. Aqui would only be responsible for the amount she received, and is not

21  responsible for Mr. Jordan.

22  Plaintiff does not address the wording of the retainer agreement, other than to note that the

23  operative word defining Mr. Jordan and Ms. Aqui's entitlement to the funds was "realized."  The

24  agreement, attached as an exhibit to the excerpts of Ms. Aqui's deposition (Exhibit A to the Haas

25  declaration and Exhibit C to the Cohen declaration), states in pertinent part as follows:

26  > The total <u>amount realized</u> by way of settlement and/or litigation <u>will be referred to</u>

27  > <u>as total settlement</u>. [language regarding payment of costs.] . . . . The remaining

28  > sum will be split as outlined in Phase I, II, III. (emphasis added)

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**   2   KNIGHT v. AQUI, et al.
Case No. CV11 6337 YGR

Roeca Haas Hager LLP
250 Montgomery Street, Suite 1410, San Francisco, CA 94104
415.352.0980  Fax 415.352.0988

1  Phase III became applicable once Mr. Knight filed suit against Double Shot. Thus, Mr. Jordan
2  and Ms. Aqui were entitled to 40% of the total settlement. The agreement does not differentiate
3  between monies actually collected and those which Double Shot was obligated to pay under the
4  settlement. Instead, it calls for the calculation to be made on the amount realized, which is
5  defined as the "total settlement" which would necessarily include the amounts Double Shot
6  agreed to pay, but ultimately may not actually pay.

7  Under this interpretation of the agreement, Ms. Aqui was entitled to the amounts she
8  received, and she is not liable to Mr. Knight.

9  Further, Ms. Aqui testified she discussed this arrangement with Mr. Knight, and he went
10 along with it. She testified Mr. Knight initially requested that the settlement agreement provide
11 that all payments by Double Shot go through her trust account. However, Ms. Aqui did not do
12 that because she explained to him that once she and Mr. Jordan had received what they were
13 entitled to, she was going to have the remaining payments made directly to Mr. Knight. (Aqui
14 Depo., 36:7 and following)

15 As a result, the settlement agreement provides that the first five payments from Double
16 Shot would be paid jointly to Ms. Aqui's trust account and Mr. Knight. The remaining payments
17 - 8 in total – would be made solely to Mr. Knight. (See settlement agreement at pages 1 and 2 of
18 5, attached as an exhibit to Ms. Aqui's deposition, Exhibit A to Haas Declaration and Exhibit C to
19 Cohen Declaration) Ms. Aqui intended to provide Double Shot's counsel with contact
20 information for Mr. Knight once the payments were to be made directly to him, as she did not
21 want his address reflected in the settlement agreement. (Aqui Depo., at pp. 52-55)

22 Ms. Aqui testified she explained this to Mr. Knight, and she told him she did not want to
23 have to collect the remaining payments. Among other things, this would require her to issue a
24 Form 1099, after she and Mr. Jordan had received their share. (Aqui Depo., at p. 37) Mr. Knight
25 accepted this, and it was only after Double Shot defaulted that Mr. Knight objected. Mr. Knight
26 implicitly acknowledges this in his declaration where he states he objected once he understood
27 that he was taking the "primary risk" of non-payment. (Knight Decl., ¶4)
28

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**  3  KNIGHT v. AQUI, et al.
Case No. CV11 6337 YGR

Had he objected earlier, Ms. Aqui would not have given Mr. Jordan his share. (Aqui Depo., at p. 92:13-19)  Mr. Jordan was ill at the time and was not expected to live much longer. (Aqui Depo., at p. 75)  Thus, by accepting Ms. Aqui's explanation, Mr. Knight put Ms. Aqui in jeopardy of having to defend this claim.  She relied upon his acceptance in giving Mr. Jordan his share.

*Dalziel vs. State Bar* (1936) 6 Cal.2d 433 does not support plaintiff's claim.  In that case, the plaintiff authorized attorney Dalziel to take steps to collect her share of an inheritance.  In giving him that authority, she wrote the following terms, which were accepted by Dalziel:

> I desire to employ you to take whatever legal steps may be necessary to *collect* this interest for me. I understand that the other seven beneficiaries in said estate are also retaining you.
>
> In case you accept this offer, I authorize you to take whatever legal steps may, in your opinion, be deemed necessary to protect and secure my interests, and agree to pay you, as your compensation for your services in this matter, 25% of the *amount recovered,* either in settlement, compromise, adjustment, suit or otherwise, and authorize you to deduct this amount from the *amount of recovery.* (*Id.* at pp. 434-35 – emphasis in original)

Thus, the wording of the agreement in *Dalziel* was materially different that the one at issue here.  It specifically authorized Mr. Dalziel to <u>collect</u> the inheritance and take his share out of amounts <u>recovered</u>.  No such language is used here.  The subject agreement does not limit it to amounts actually recovered.  Instead, as noted above the subject agreement defines the amount "realized" as the total settlement, which would include the future payments from Double Shot that were unfortunately not made, in addition to payments that were made.

The *Dalziel* opinion does not announce a blanket rule that an attorney may only take their share of amounts actually collected.  Instead, as the quote in plaintiff's papers shows (at p. 5:14 – "As we read the contract, it can only be interpreted . . .") the court's holding was based on the specific wording of the agreement.

Plaintiff has provided no legal authority holding that the wording of this agreement should be interpreted and applied as the court did with the agreement in *Dalziel.*

///

///

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**     4     KNIGHT v. AQUI, et al.
Case No. CV11 6337 YGR

### 3. There is no Evidence of Negligent Misrepresentation

A negligent misrepresentation is when a defendant makes a false statement, honestly believing it is true, but without a reasonable basis for believing it to be true. (*Gagne vs. Bertran* (1954) 43 Cal.2d 481, 487) If, however, the defendant's belief is both honest and reasonable, the misrepresentation is innocent and there is no tort liability. (*Graham vs. Ellmore* (1935) 135 Cal.App. 129, 132; *Podlasky vs. Price* (1948) 87 Cal.App.2d 151, 161)

Mr. Knight's declaration (at ¶ 4) asserts that Ms. Aqui "falsely" stated to him that she was entitled to 40% of the total settlement. However, as explained above, the contract provides for the lawyers to take 40% of the "total settlement" as that is how the amount "realized" is defined. This is simply a disagreement over interpretation of the contract's meaning.

If plaintiff's position were correct, a party that interprets an agreement differently than the other party to it, would always be liable for fraud it they expressed their differing interpretations of the contract. It is undisputed that the lawyers were entitled to 40%; only 40% of what? Ms. Aqui articulated her understanding of the agreement and why she believed she and Mr. Jordan were entitled to 40% of the total settlement. Ms. Aqui's interpretation of the agreement in not unreasonable, where it defines the amount realized as the total settlement.

If, for example, Ms. Aqui had told Mr. Knight she was entitled to 50%, that would not be reasonable as the agreement is clear the attorney's share tops out at 40%.

Plaintiff has put forth no evidence showing that Ms. Aqui's statement was false or that she did not honestly believe in her interpretation, other than Mr. Knight and his expert's opinion that disputes Ms. Aqui's interpretation of the agreement. In fact, plaintiff confirms Ms. Aqui's good faith belief that her interpretation was correct when he states she believed it was "appropriate." (P&A 3:6-9) Without some evidence that she did not have an honest belief in her interpretation, there is no negligent misrepresentation.

### 4. There was no Breach of Fiduciary Duty

As with the claim for negligent misrepresentation, plaintiff's claim for breach of fiduciary duty is based on a differing interpretation of the contract. Plaintiff has no evidence to show that Ms. Aqui knowingly misrepresented anything, or that she did not believe her interpretation of the

Roeca Haas Hager LLP
250 Montgomery Street, Suite 1410, San Francisco, CA 94104
415.352.0980  Fax 415.352.0988

1  agreement was correct. Without evidence to support that she had no basis to believe she was
2  entitled to 40% of the total settlement, there is no basis for a claim of breach of fiduciary duty.

3  Attorneys have been found liable for breach of fiduciary duty where they charged an
4  exorbitant fee. However, this has occurred where the fee was inflated due to billing for tasks that
5  were not actually performed (*Charnay vs. Cobert* (2006) 145 Cal.App.4th 170, 182) or by
6  fraudulently inflated charges. (*Bird, Marella, Boxer & Woolpert vs. Superior Court* (2003) 106
7  Cal.App.4th 419, 431) However, this is not that case. There is no dispute that Ms. Aqui was
8  entitled to 40% or that she did not perform the necessary work.

9  **5.  Ms. Aqui is not Liable for Mr. Jordan's Funds**

10  Plaintiff seeks from Ms. Aqui not only the amount he claims Ms. Aqui received and was
11  not entitled to, but also the amount that went to Mr. Jordan. Mr. Knight argues that because his
12  expert has so opined, the court should follow that.

13  Ms. Aqui's potential liability for what she received, and whether she is or is not liable for
14  what Mr. Jordan also received, is a legal conclusion for the court. Plaintiff's expert's opinion in
15  that regard is not relevant to the ultimate legal questions to be decided by the court.

16  Plaintiff has cited no law or evidence to back up his claim that she should also be liable
17  for what Mr. Jordan received, other than to argue Ms. Aqui and Mr. Jordan were engaged in a
18  joint venture. However, he cites to no evidence or law to support that conclusion either.

19  In her deposition, Ms. Aqui testified that she and Mr. Jordan were not partners, and that
20  their agreement was simply to share office space. Each paid their own expenses (phones,
21  insurance, employees, etc.) and had their own practices. Mr. Jordan occasionally referred clients
22  to Ms. Aqui, and for that she paid him a referral fee. (Aqui Depo. at pp. 12-13) Such an
23  arrangement does not indicate a joint venture but rather separate practices.

24  Further, the retainer agreement which is on letterhead confirms they were independent
25  attorneys, and not a partnership. It describes them as "An Association of Individual Attorneys."
26  They were not partners. Under the circumstances, she would not be liable to Mr. Knight for any
27  malfeasance by Mr. Jordan.

28

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**   6   KNIGHT v. AQUI, et al.
Case No. CV11 6337 YGR

1   There is no fiduciary duty between co-counsel. (*Saunders vs. Weissburg & Aronson* (1999) 74 Cal.App.4th 869, 873)  Accordingly, one co-counsel may not sue another for the other attorney's purported negligence in reducing or eliminating the fee that the suing attorney expected to receive. (*Beck vs. Wecht* (2002) 28 Cal.4th 289, 290, 297-98)

If Ms. Aqui and Mr. Jordan as co-counsel could not sue each other for the other's wrongdoing, it follows that they are not responsible for the other attorney's wrongdoing.  If Mr. Jordan did something wrong and he is liable to Mr. Knight because of that, Ms. Aqui is not responsible for his wrongdoing.

There is no evidence of a partnership or joint venture from which the court may conclude that Ms. Aqui is liable for funds that went to Mr. Jordan.  If the court should find liability against Ms. Aqui, it should be limited to the amount that she actually received from the settlement.  Mr. Knight can pursue his remedies against Mr. Jordan and his estate.

**6.     Conclusion**

For the reasons discussed, defendant Diane Aqui respectfully requests that the court deny plaintiff's motion for summary judgment.  The retainer agreement entitled her to a 40% share of the total settlement.  Plaintiff has produced no evidence to support claims for negligent misrepresentation or breach of fiduciary duty.  Nor has he produced evidence to show why Ms. Aqui should be responsible for Mr. Jordan's purported malfeasance.  If the court should find liability, Ms. Aqui should only be liable for what she actually received, and not what Mr. Jordan received.

Dated: August 9, 2013                    ROECA HAAS HAGER LLP

By: ___/S/_____
     Edward D. Haas
     Attorneys for Defendant
     DIANE AQUI

G:\Knight\Pleadings\Opp to MSJ.doc