UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM E. KNIGHT,<br>　　　Plaintiff,<br>　　v.<br>DIANE AQUI, et al.,<br>　　　Defendants. | Case No. 11-cv-06337-JST<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF No. 47 |

In this legal malpractice action, Plaintiff William E. Knight moves for partial summary judgment against Defendant Diane Aqui on the question of liability pertaining to each of Knight's causes of action for professional negligence, breach of fiduciary duty, breach of contract, conversion, and negligent misrepresentation, and on the question of whether Aqui is jointly and severally liable with her co-Defendants for "special damages" in the amount of $102,300.18.

**I.　BACKGROUND**

　**A.　Procedural Background**

Plaintiff William Knight filed this action in December 2011 against his former attorneys, Defendants Diane Aqui and Mark D. Jordan. Plaintiff also named Jordan's estate as an additional Defendant, as Jordan is now deceased. ECF No. 1. The operative First Amended Complaint, ("FAC"), ECF No. 14, asserts five causes of action: professional negligence, breach of contract, fraudulent misrepresentation, conversion, and breach of fiduciary duty.

The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of South Carolina, Defendants are citizens of California, and the amount in controversy exceeds $75,000.

Defendant Aqui answered the original complaint on January 12, 2012, ECF No. 4, and the First Amended Complaint on August 21, 2012, ECF No. 16. Defendants Jordan and his estate

have not appeared and are not subject to the instant motion.

### B. Undisputed Facts

Defendants Aqui and Jordan represented Plaintiff Knight in an action styled Knight v. Doubleshot, Inc., in Sonoma County Superior Court, Case No. SVC 241748. FAC ¶ 9. Plaintiff retained Aqui and Jordan in March 2007. Plaintiff's contingency agreement with Defendants, executed March 29, 2007, provided that Defendants would receive a contingency fee of forty percent of "the total amount realized by way of settlement and/or litigation" if the case resolved after the court set a trial date. Retainer Agr., Cohen Decl. ISO Mot. for Partial SJ, Ex. D, ECF No. 50-4. Nothing in the retainer agreement addresses when Defendants would receive their contingency fee in relation to Knight receipt of settlement funds; nor does the agreement address installment payment settlements. Id. Both Aqui and Jordan signed the agreement. Id.

Defendants filed the underlying action, in which Knight was plaintiff, in October 2007. FAC ¶ 9. On or about April 28, 2009, Aqui allegedly advised Knight to settle the case for $550,000, to be paid in installment payments by Doubleshot, Inc., the defendant in that action. Id. According to Plaintiff, Aqui "negligently failed to obtain any personal guaranty of the installment payments from the chief and controlling shareholder of Doubleshot, Inc., Alan Shulman."[1] Id.

The settlement agreement provided that Doubleshot "hereby agrees to make payment to Plaintiff WILLIAM E. KNIGHT in the amount of five hundred and fifty thousand dollars ($550,000.00)." The agreement provided for an initial payment of $150,000 payable to "William E. Knight and Trust Account of Attorney Diane Aqui," followed by four payments payable in the same manner in the amount of $33,333.33, followed by eight payments payable only to "William E. Knight" in the amount of $33,333.33. Settlement Agr., Cohen Decl. ISO Mot. for Partial SJ, Ex. E, ECF No. 52 pp. 1–2. The agreement also provided: "All checks shall be mailed to Attorney Diane Aqui, 1612 Fourth Street, Stanta Rosa, CA 95404." Settlement Agr. p. 2.

Following execution of the settlement agreement, Doubleshot sent payments totaling $254,999.99 to Aqui. FAC ¶ 10; Aqui Depo. p. 54:17–22 (ECF No. 50 p. 25). Doubleshot then

---

[1] To the extent that Plaintiff asserts a professional negligence claim based on Aqui's handling of the settlement negotiation, that claim is not at issue in the instant motion.

suspended payments and became insolvent. Id.; Knight Decl. ISO Mot. for Partial SJ, ECF No. 49 ¶ 2. Aqui and Jordan paid themselves $204,300.78 from the settlement proceeds, and distributed $50,699.81 to Knight. Knight Decl. ¶ 3. Knight had originally received nothing, but, after discussing the matter with Aqui, Aqui agreed to "compromise" her position and agreed to disburse the approximately fifty thousand dollars to Knight. Knight Decl. ¶ 4. Knight agreed to the compromise because Aqui advised him that his attorneys were legally entitled to forty percent of the total amount promised, to be paid before Knight received any portion of his share. Knight Decl. ¶ 4.

No written document provided for Aqui to take her entire fee from the settlement proceeds before Knight received anything. Rather, Aqui testified that Knight "acquiesced to the disbursement of the settlement funds by signing the settlement agreement and the stipulated judgment." Aqui Depo. p. 92:4-6 (ECF No. 55-1 p.16).

Knight then filed this lawsuit. According to Plaintiff, Defendants breached the agreement and committed professional negligence by "(a) falsely advising Plaintiff that the contingency agreement required that the attorney be paid before the Plaintiff received anything; (b) failing to advise Plaintiff, when he raised questions about this, to seek independent counsel in regard to the adversarial relationship between the parties as to the subject of those questions; and (c) remitting to Plaintiff only $50,699.81 out of the $254,999.99 actually collected, instead of the $151,259.66 owed to Plaintiff . . . minus $2,900.55 in costs." FAC ¶ 11. According to the First Amended Complaint, Knight demanded, and Aqui refused to pay him, the rest. Id.

Defendant Jordan died December 21, 2010, and Aqui continued to represent Plaintiff until at least November 28, 2011. FAC ¶ 12.

## II. LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The

Court must draw all reasonable inferences in the light most favorable to the non-moving party. Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010). However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Partial summary judgment is appropriate for "part of each claim or defense" provided there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Where the moving party bears the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the moving party would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything, and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. Id. at 1102–03

At summary judgment, the Court applies the same evidentiary standard of proof that it would apply at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The Court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The Court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elect. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith

4

Radio, 475 U.S. 574, 587 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Affidavits and declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party fails to support an assertion of fact, the Court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). "The choice among possible orders should be designed to encourage proper presentation of the record." Adv. Cttee. Notes to 2010 Amendments to Fed. R. Civ. P. 56(e). However, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Adv. Cttee. Notes to 1963 Amendments to Fed. R. Civ. P. 56(e).

### III. ANALYSIS

Plaintiff moves for partial summary judgment on the question of liability for each of his five causes of action, and, in addition, on the question of joint and several liability and special damages, which he seeks in the amount of $102,300.18.

#### A. Professional Negligence and Breach of Fiduciary Duty

To state a claim for professional negligence arising out of legal malpractice, a plaintiff must establish the following elements: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise;" (2) breach; (3) causation; and (4) damage. Martorana v. Marlin & Saltzman, 175 Cal. App. 4th 685, 693

(2009) (quoting Coscia v. McKenna & Cuneo, 25 Cal. 4th 1194, 1199 (Cal. 2001)).

When, as here, the client asserts a breach of fiduciary duty, and not a failure of advice leading to a failure on the merits of an underlying action, analysis of the elements of duty and breach differs slightly. Indeed, although Plaintiff's First Amended Complaint lists as separate causes of action professional negligence and breach of fiduciary duty, they are, in the context of legal malpractice claims like this one, functionally the same.[2] See Schultz v. Harney, 27 Cal. App. 4th 1611, 1621 (Cal. Ct. App. 1994) ("An attorney's breach of the ethical duties of good faith and fidelity, which are owed by an attorney to his or her client, amounts to legal malpractice and is actionable."); Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (Cal. Ct. App. 1995) (analyzing professional negligence and breach of fiduciary duty together while recognizing the causes of action are distinct); Rest. (Third) of Law Governing Lawyers § 49 (2000) ("Many claims brought by clients against lawyers can reasonably be classified either as for breach of fiduciary-duty or for negligence without any difference in result. For example, the duty of care enforced in a negligence action is also a fiduciary duty . . . . Pleaders typically add a fiduciary-duty claim to a negligence count for reasons of rhetoric or completeness.").

An attorney's duty to the client is "governed by the Rules of Professional Conduct, and [] those rules, together with statutes and general principles relating to other fiduciary relationships, 'help define the duty component of the fiduciary duty which an attorney owes to his client.'" Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton, 96 Cal. App. 4th 1017, 1032 (Cal. Ct. App. 2002) (quoting Mirabito v. Liccardo, 4 Cal. App. 4th 41, 45 (Cal. Ct. App. 1992)).

Though the scope of the duty is ordinarily a question of law, breach is ordinarily a question of fact reserved for the jury. However, "breach of duty and proximate cause may on occasion be resolved as matters of law, if there can be no reasonable doubt as to whether the attorney's conduct fell below the standard of care or if reasonable minds could not differ as to whether there

---

[2] The elements of breach of fiduciary duty are: (1) the existence of the fiduciary relationship, (2) breach, and (3) damage. Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 820 (Cal. Ct. App. 2011) ("We shall consider the causes of action for breach of fiduciary duty, professional negligence, and breach of contract together.").

was causation." Dawson v. Toledano, 109 Cal. App. 4th 387, 396 (Cal. Ct. App. 2003). "Expert testimony is not required, but is admissible to establish the duty and breach elements of a cause of action for breach of fiduciary duty where the attorney conduct is a matter beyond common knowledge." Stanley, 35 Cal. App. 4th at 1087. Expert testimony is not required where the attorney's performance "is so clearly contrary to established standards that a trier of fact may find professional negligence without expert testimony." Day v. Rosenthal, 170 Cal. App. 3d 1125, 1146–1147 (Cal. Ct. App. 1985).

### 1. Duty and Breach

"Misappropriation of client funds has long been viewed as a particularly serious ethical violation . . . . It breaches the high duty of loyalty owed to the client, violates basic notions of honesty, and endangers public confidence in the legal profession." McKnight v. State Bar, 53 Cal. 3d 1025, 1035 (Cal. 1991) (quoting Kelly v. State Bar, 45 Cal. 3d 649, 656 (Cal. 1988)) (citations omitted). See also, Jackson v. State Bar, 15 Cal. 3d 372, 383 (Cal. 1975) ("We have frequently stated that the misappropriation of funds entrusted to an attorney merits severe discipline, even in cases where the attorney has no prior disciplinary record."). An attorney who misapplies the law of attorney's fees to the client's financial detriment breaches the duty of care to the client. Schultz, 27 Cal. App. 4th at 1621 ("Harney had a duty to know and properly apply the applicable law relating to fees for his services . . . .").

Here, Plaintiff alleges that Aqui breached her fiduciary duty to him, and misappropriated settlement funds that belonged to him, by deriving her forty percent fee from the total settlement amount, and collecting it in full before distributing any settlement proceeds to Plaintiff. Because the defendant in the underlying action has only paid approximately fifty percent of the settlement payments, Aqui received her entire forty percent, but Knight received far less than the remaining sixty.

As an initial matter, the Court notes that the contingency fee agreement at issue did not comply with California Business and Professions Code section 6147, which requires that contingency fee agreements be executed in writing, and that they include a number of statements, including: "A statement as to how disbursements and costs incurred in connection with the

prosecution or settlement of the claim will affect the contingency fee and the client's recovery" and "a statement that the fee is not set by law but is negotiable between attorney and client." Cal. Bus. & Prof. Code § 6147(a)(2), (4). The agreement did not contain either statement, which rendered "the agreement voidable at the option of the plaintiff." Cal. Bus. & Prof. Code § 6147(b). See also, Fergus v. Songer, 150 Cal. App. 4th 552 (Cal. Ct. App. 2007); Alderman v. Hamilton, 205 Cal. App. 3d 1033 (Cal. Ct. App. 1988).

Had the retainer agreement complied with the statutory requirements for contingency fee contracts, and had the retainer agreement provided for Defendants' fee to be paid before Knight's recovery would be distributed, the agreement *might* have been lawful.[3] See Cal. State Bar Form. Opn. 1994–135 ("While an attorney may contract with a client to receive the entire fee at the time of settlement, that contract must comport with" Rules 4-200 and 3-300 of the California Rules of Professional Conduct, as well as Business and Professions Code section 6147).[4] But it did not. Thus, the attorney-client relationship was subject to the general rule in California that, "[a]bsent other agreement, a contingency fee is payable only as the client obtains recovery. Thus, where the settlement calls for future payments on a periodic basis, the attorney's fee is payable pro rata; *i.e.*, the attorney is entitled to the agreed percentage of each periodic payment when, as and if actually received by the client." Cal. Prac. Guide Prof. Resp. Ch. 5-B (citing Sayble v. Feinman, 76 Cal. App. 3d 509, 513–14 (Cal. Ct. App. 1978)).

In Sayble v. Feinman, a contingency fee agreement provided for the attorney to receive "twenty-eight and one-third of any money recovered." The client had settled for a life annuity that

---

[3] One California Practice Guide on Professional Responsibility recommends that attorneys seeking to collect fees in the manner Aqui did here include language in the retainer agreement such as: "Attorney's fee shall be payable in full at time of settlement even if the settlement is in the form of payments to be received over a period of time. If the initial payments under such settlement are insufficient to pay Attorney's fee in full, all future payments shall be assigned exclusively to Attorney until the balance of the fee is paid in full." Paul W. Vapnek, Cal. Prac. Guide Prof. Resp. Ch. 5-B.

[4] This State Bar opinion involved the payment of fees from the proceeds of a structured settlement, not an unsecured promise to pay such as the one present here. It is not clear the State Bar would have reached the same result on the facts of the present case.

8

paid distributions in monthly installments. The client then provided the called-for percentage to her counsel as each installment was distributed. Her counsel sued to recover the present value of the entire annuity in one lump sum. The Sayble court rejected the argument that the word "money" in the phrase "money recovered" applied to an annuity because "the right to be paid from an annuity, or even the present value of that right is not 'money recovered.'" Id. The "money recovered" was recovered by the client on a monthly basis, and so, absent an agreement to the contrary, her counsel was only entitled to the contingent percentage of each monthly payment as they were distributed.

The Sayble court also concluded that the degree of ambiguity provided for in the contract was immaterial because the parties stipulated that they did not contemplate anything but a lump sum settlement when they executed the agreement. Instead, the court held: "Since [counsel] prepared this contract and in light of the oppressive nature of their interpretation of the clause at issue even if it can be argued the contract is ambiguous, we resolve any uncertainties in favor of a fair and reasonable interpretation and against the inflexible construction urged by [counsel]." Id. at 515. See also Mahoney v. Sharff, 191 Cal. App. 2d 191, 196 (1961) ("As he is an attorney and prepared the contract, if there is any ambiguity in it we must construe the contract most strongly against him."); Norman v. Berney, 235 Cal. App. 2d 424, 432-33 (1965)("Since a contract of this nature is nearly always drafted by the attorney, it must be construed most strongly against him and in favor of the client."). The court further observed: "To agree with [counsel] would be to hold that they are entitled immediately to some 80 percent of the money recovered thus far. Such an interpretation of a contingent fee contract would be unreasonable and absurd." Id.

More recently, the California State Bar's Standing Committee on Professional Responsibility addressed this precise issue. The Committee advised in no uncertain terms: "An attorney whose fee agreement is silent as to how attorneys' fees shall be paid in the event of a structured settlement is permitted to receive fees only on the same pro rata basis that the client receives compensation." Cal. State Bar Form. Opn. 1994–135. While the State Bar's opinion applies by its terms to a structured settlement, this Court concludes that the same policy behind the opinion applies with even more force to an unsecured promise to pay, such as the one here.

9

The parties heavily debate the impact of a 1936 decision in which the California Supreme Court considered a contingency fee agreement that authorized the attorney to deduct as a fee "twenty five percent of the amount recovered" from the recovery. Dalziel v. State Bar, 6 Cal. 2d 433 (Cal. 1936). Because the attorney was unable to collect the full amount of the inheritance he was hired to collect, the court held that he could not collect twenty-five percent of the total amount sought, only twenty five percent of the amount actually recovered. Id. Knight argues that, as in Dalziel, the recovery here was incomplete, because Doubleshot stopped making payments, so Aqui is entitled only to forty percent of the amount actually paid under the settlement. Aqui argues that the case is distinguishable because the retainer at issue here provided for payment of a contingency fee based on the "total amount realized by way of settlement," which the agreement subsequently refers to as the "total settlement." She argues that the phrase "total amount realized" means the amount the settling defendant *agreed* ultimately to pay, not the amount the defendant *actually* paid.

As other courts have done in like circumstances, the Court finds that "[s]uch an interpretation of a contingent fee contract would be unreasonable and absurd." Sayble, 76 Cal. App. 3d at 509. The Court finds no distinction, for these purposes, between the word "recovered" used in Dalziel, and the word "realized" used in the Knight retainer agreement, particularly in light of the Court's duty to construe the retainer agreement against Aqui. The only reasonable interpretation of the retainer agreement is that Knight's lawyers were entitled to take their fee as a percentage of the monies actually received by Knight, at the time those funds were received.

Aqui also raises several issues of fact that are not material. For example, Aqui claims Jordan drafted the agreement, and that she had no input into the drafting. But Plaintiff's claims do not stem from the drafting of the retainer agreement; rather, Plaintiff alleges that Aqui took funds for herself that belonged to Knight. Next, Aqui argues that there is no evidence Doubleshot, the settling defendant, will not make further payments under the settlement agreement. This too is irrelevant, because the question is not whether additional funds will be paid in the future, but whether defendant was entitled to anything more than 40 percent of the funds already paid.

Aqui also argues that Knight has sued Doubleshot in an attempt to collect the remaining

1   payments, and that Aqui never deposited the funds in her attorney-client trust account, even
2   though she promised Knight she would. Neither of these facts, even if true, affect any of
3   Plaintiff's claims.
4       Aqui also argues that the settlement agreement implicitly reflects Knight's agreement to
5   allow Defendants to take their fee before Knight collected any funds. Even if there were such
6   agreement – which the Court does not find – it would not be valid. As stated above, to pass
7   muster, an agreement to "cash out" an attorney must comply with the Rules of Professional
8   Conduct and statutory requirements: the agreement must be written and signed by the client, it
9   must include the statutorily required statements, it must not provide for an unconscionable fee (for
10  example, an unconscionable percentage of the amount actually recovered), and the attorney must
11  advise the client of the client's right to seek the advice of independent counsel and provide a
12  reasonable opportunity for the client to do so. See id.; Cal. R. of Prof. Conduct 3-300, 4-200; Cal.
13  Bus. & Prof. Code § 6147. Aqui has provided no evidence that Knight agreed to the lump sum
14  arrangement, or, if he did, that the agreement complied with those requirements and was otherwise
15  reasonable and fair, as required by the rules of professional conduct.
16      For the foregoing reasons, the Court concludes that Aqui unlawfully misappropriated funds
17  to which Knight, her client, was entitled, in breach of her fiduciary duty and duty of loyalty to
18  him, and in breach of the tort law duty she owed him as his attorney.

### 2.  Causation and Damages

20  Knight alleges, and Aqui does not contest, that Aqui's conduct proximately caused damage
21  to Plaintiff, though they disagree about the allocation of the sum between Defendants, which the
22  Court will discuss separately below. See infra, § III.E.

### 3.  Good Faith Defense

24  Aqui asserts, without citing to relevant authority, that she cannot be liable for professional
25  negligence or breach of fiduciary duty stemming from the misappropriation of funds because her
26  actions were taken in good faith. That defense would only preclude summary judgment in this
27  case if Aqui's actions were both reasonable and in good faith. The standard does not depend on
28  Aqui's subjective state of mind, but on the well-established objective negligence standard. See

Rest. (Third) of Law Governing Lawyers § 52 cmmt. b ("The duty is one of reasonableness in the circumstances."), § 54 ("A lawyer is not liable under § 48 or § 49 for any action or inaction the lawyer *reasonably* believed to be required by law, including a professional rule." (emphasis added) (2000). The Court must ask whether Aqui's interpretation of the law was "an arguable one upon which reasonable lawyers could differ." Smith v. Lewis, 13 Cal. 3d 349, 357 (Cal. 1975), overruled on other grounds by In re Marriage of Brown, 15 Cal. 3d 838, (1976).

Here, Aqui's misappropriation of funds violated clearly established law. The conduct was unreasonable as a matter of law. Consequently, the Court holds that no genuine issue of material fact remains on Knight's causes of action for professional negligence and breach of fiduciary duty against Defendant Aqui, and that Knight has established Aqui's liability as a matter of law.

### B. Breach of Contract

Related to Knight's causes of action for professional negligence and breach of fiduciary duty is his claim for breach of contract. Where a client alleges that his attorney violated the retainer agreement in violation of the rules of professional conduct, success on the malpractice and breach of fiduciary duty claims generally establishes the breach of contract claim. Stanley, 35 Cal. App. 4th at 1092 n. 7. That is the case here, as Knight has established as a matter of law that Aqui's conduct breached the terms of the retainer agreement, which required her to distribute to Knight his pro rata share of settlement funds as they were collected. Consequently, Knight has established Aqui's liability on his breach of contract claim.

### C. Conversion

The elements of conversion are: "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." Farmers Ins. Exch. v. Zerin, 53 Cal. App. 4th 445, 451–52 (Cal. Ct. App. 1997) (quoting Oakdale Village Group v. Fong, 43 Cal. App. 4th 539, 543–544 (Cal. Ct. App. 1996)). "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." Id. Moreover, "[m]oney can be the subject of an action for conversion if a specific sum capable of identification is involved." Id. (citing Weiss v. Marcus, 51

Cal. App. 3d 590, 599 (Cal. Ct. App. 1975)).

Here, the subject of the action is a specific sum capable of identification — the difference between what Knight received and sixty percent of the amount recovered — to which Knight has established he was entitled, and which Aqui wrongfully converted to her own purposes, resulting in damage to Knight in that amount. Plaintiff has established that no genuine issue of material fact remains as to his cause of action for conversion, and that, as a matter of law, Aqui is liable to him for the conversion.

### D. Negligent Misrepresentation

The elements of fraudulent misrepresentation are: (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud or induce reliance; (d) justifiable reliance; and (e) resulting damage. Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (Cal. Ct. App. 2006) (quoting Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (Cal. 1996)). However, "in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." Id.

Here, Knight has established that no genuine issue of material fact remains as to any of the elements of his negligent misrepresentation claim. Aqui concedes that she told Knight the retainer agreement provided for attorney's fees to be paid first in the event of a structured settlement, based on her prior experience with retainer agreements at a former law firm that specifically provided for that scenario. Aqui Depo. pp. 38:8–39:6 (ECF No. 50 p. 24). That representation was false, because clearly established law provided for the contingency fee to be paid pro rata as settlement payments were collected. Consequently, Aqui "lacked any reasonable ground for believing the statement to be true." It is also clear that Aqui made the representation in order to induce Knight to agree to the settlement as drafted, and to acquiesce to Aqui's collection of her contingency fee from the first settlement payments. Indeed, Aqui secured from Knight a power of attorney so she could collect the checks on his behalf. Aqui Depo. pp. 35:15–36:12 (ECF No. 50 pp. 23–24). Knight, her client, justifiably relied on that representation, resulting in damage. Knight has thus established as a matter of law Aqui's liability for negligent misrepresentation.

13

### E. Joint Liability and Damages

Aqui argues that, even if she is liable to Knight, she cannot be liable for more than half the funds to which Knight is entitled because she is not jointly and severally liable for the harm. Aqui claims Jordan is liable for the other half because she had a fee-sharing agreement with Jordan, and she gave Jordan half of the settlement proceeds she (Aqui) received.

This additional fact is not relevant to Aqui's liability to Knight.[5] Aqui, not Jordan, received the checks from Doubleshot. The checks were made out to her (and Knight), and mailed to her. Her duty was to turn the funds over to Knight, after subtracting forty percent pursuant to her retainer agreement. When she deposited some of the funds in her own account instead, she converted them. When she deposited some of the funds in Jordan's account (or gave them to him to deposit), she also converted them. Aqui is therefore liable for each of Knight's causes of action for the full amount of the damage Knight suffered.

By his motion, Knight seeks partial summary judgment on the question of "special damages," in the amount of $102,300.18, which Knight calculates as the difference between the distribution he received from the settlement funds recovered to date and the amount he should have received. That calculation illustrates that Knight's motion actually seeks general, not special damages. See, e.g., 24 Williston on Contracts § 64:12 (4th ed.) ("General damages are considered to include those damages that flow naturally from a breach, that is, damages that would follow any breach of similar character in the usual course of events."); Wright & Miller, Federal Practice and Procedure: Civil 3d § 1310, pp. 346–47 (distinguishing general damages, such as contract damages, from special damages, which are "the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case").

---

[5] The Court notes, however, that, had Aqui entered into a fee-splitting arrangement with Jordan, and if, as she argues, Jordan was not her law partner or associate, she likely violated California Rule of Professional Conduct 2-200, which requires that the fee arrangement be disclosed in full to the client, and that the client consent to any such agreement in writing, neither of which occurred here, and the fee-splitting agreement is likely unenforceable as a matter of public policy. See, e.g., Chambers v. Kay, 29 Cal. 4th 142, 150 (Cal. 2002); Huskinson & Brown, LLP v. Wolf, 32 Cal. 4th 453, 462–63 (Cal. 2004).

14

Under the contingency fee agreement, Knight was entitled to sixty percent of the settlement. To date, the settling defendant has paid a total of $254,999.99, sixty percent of which is $152,999.99. Knight Decl. ¶ 3. Knight declares under penalty of perjury (and Aqui does not dispute) that Aqui distributed to Knight a total of $50,699.81. Id. That leaves $102,300.18 outstanding, for which sum Aqui is liable to Knight.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED as follows:

1. Defendant Aqui is liable to Plaintiff for professional negligence, breach of fiduciary duty, breach of contract, conversion, and negligent mispresentation.

2. Defendant Aqui is liable to Plaintiff for the full amount of damages incurred by her conduct, including no less than $102,300.18 in general damages.

**IT IS SO ORDERED.**

Dated: September 5, 2013

_____
JON S. TIGAR
United States District Judge